IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL NEGRETE,<br><br>                Petitioner,<br><br>    vs.<br><br>RONALD DAVIS, Warden, San Quentin State Prison,<br><br>                Respondent. | No. 2:15-cv-00687-JKS<br><br>MEMORANDUM DECISION |

Manuel Negrete, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Negrete is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at San Quentin State Prison. Respondent has answered, and Negrete has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On March 8, 2012, Negrete was charged with attempted premeditated murder (Count 1); aggravated mayhem (Count 2); two counts of assault likely to cause great bodily injury (Counts 3 and 5); and battery with serious bodily injury (Count 4) in connection with a bar fight involving many participants. The information further alleged that Negrete personally inflicted great bodily injury resulting in brain injury or paralysis with respects to counts 3 and 4. On May 5, 2012, Negrete proceeded to a jury trial. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying this case and the evidence presented at trial:

> In June 2011 [Negrete] went to the Last Call bar. At the bar [Negrete] tried to buy a drink for another bar patron, Jessenia Isordia. After she refused his offer, [Negrete] punched her in the face and called her a bitch.

The bar bouncer witnessed the attack and testified [Negrete] punched Isordia twice in the face with his closed fist.  The bouncer led [Negrete] out of the bar.  About 20 bar patrons followed [Negrete] outside and a fight broke out.

As the fight raged, Angel Martinez made his way through the melee.  Someone hit Martinez with a "haymaker" punch, knocking him unconscious.  The man began to stomp on the prone Martinez.  A bouncer at the bar and another bar patron testified that [Negrete] joined the attacker and repeatedly stomped Martinez in the face with his heel.  [Negrete] then kicked Martinez in the face with powerful "field goal"-style kicks.  Martinez remained unconscious, unable to respond or defend himself.  Following the beating, Martinez was in a coma for at least five days and remained hospitalized for a month and a half, suffering from a traumatic brain injury.

During the brawl, Arta Rusch was pushed to the center of the melee.  [Negrete] punched Rusch in the face with a "haymaker punch" and knocked her out.  Afterward, [Negrete] made eye contact with one of the bar patrons, threw his hands in the air, and shouted, "Come get some."  He then fled on foot.

After witnesses described [Negrete] to police officers, the officers detained him.  [Negrete] was intoxicated, had blood around his left eye, and had a cut under his lip.

**Defense**

[Negrete] testified in his own behalf.  He stated he went to the Last Call bar to celebrate his birthday with his girlfriend and her sister.  [Negrete] drank "a few" beers before he arrived and had at least six or seven mixed drinks while at the bar.

[Negrete] denied tangling with anyone inside the bar but testified he accidentally bumped into a woman as he left.  Although he apologized, the woman became upset, swore at him, and began to fight with [Negrete's] girlfriend.

The bar bouncer broke up the fight and escorted them out of the bar.  Once outside, someone "sucker punched" [Negrete], and he fought back to defend himself.  [Negrete] continued to fight until an officer stopped him.  During the brawl, [Negrete's] girlfriend was by his side, fighting with another woman.

[Negrete] testified he did not kick or stomp on anyone.  He had no physical contact with Martinez, nor did he strike Rusch or Isordia.  Isordia could have been the woman fighting with [Negrete's] girlfriend in the bar.

**Verdict and Sentence**

The jury found [Negrete] guilty of counts 2, 3, and 4.  The jury also found true the great bodily injury allegations as to counts 3 and 4.  The jury found [Negrete] not guilty of count 5, but guilty of the lesser included offense of misdemeanor assault.  After the jury could not reach a verdict on count 1, the trial court declared a mistrial and dismissed the charge.

The trial court sentenced [Negrete] to life in prison with the possibility of parole on count 2, four years on count 3, and four years on count 4, plus an additional five years each on counts 3 and 4 under the infliction of a brain injury enhancements (former § 12022.7, subd. (b)) and an additional three years each on counts 3 and 4 under the infliction of great bodily injury enhancements (former § 12022.7, subd. (a)).  The court

then stayed sentence on counts 3 and 4 under section 654. The court imposed 180 days' time served on count 5. In addition, the trial court imposed several fines, including a $240 restitution fine.

*People v. Negrete*, No. C071519, 2014 WL 413060, at *1-2 (Cal. Ct. App. Feb. 3, 2014).

Through counsel, Negrete appealed his conviction, arguing that: 1) the aggravated mayhem conviction was not supported by legally sufficient evidence because the prosecution failed to prove that Negrete had the specific intent to maim; 2) the great-bodily-injury enhancements in counts 3 and 4 were not supported by legally sufficient evidence because the prosecution failed to prove it was impossible to determine which act by which aggressor resulted in the great bodily injury and thus the group beating exception did not apply; 3) the trial court erred by instructing the jury with CALCRIM Nos. 3160 and 3161, which were not supported by the evidence and incorrectly stated the law applicable to the case; 4) the great-bodily-injury enhancement in Count 4 should be vacated because great bodily injury is an element of the crime of battery resulting in serious bodily injury; 5) the court erred in imposing two great-bodily-injury enhancements on Count 3, in violation of state law; and 6) the trial court's imposition of a $240 restitution fine violated the ex post facto clause and Negrete's right to due process. The prosecution conceded that Negrete was correct with respect to two of the claims challenging the great-bodily-injury enhancements imposed on Counts 3 and 4 (claims 4 and 5), but otherwise opposed the appeal. In a reasoned, unpublished opinion issued on February 4, 2017, the Court of Appeal modified the abstract of judgment to correct the enhancements imposed on Counts 3 and 4 but unanimously affirmed the judgment in all other respects. *Negrete*, 2014 WL 413060, at *5-6. Negrete petitioned for review in the California Supreme Court, raising the four claims he

unsuccessfully raised before the Court of Appeal. The Supreme Court denied the petition for review without comment on April 9, 2014.

Negrete then filed in the California Superior Court a *pro se* petition for habeas relief. In that petition, he argued that: 1) the evidence presented was insufficient to prove aggravated mayhem; 2) trial counsel was ineffective for failing to assert imperfect self defense; and 3) trial counsel was ineffective for "fail[ing] to request the trial court to 'further instruct' his jury on imperfect self-defense." The superior court denied the petition in an unpublished, reasoned opinion issued on April 23, 2015. Negrete raised the same claims in a *pro se* habeas petition in the California Supreme Court, which was summarily denied on April 29, 2015.

While his state habeas petitions were pending, Negrete timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on March 23, 2015. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Negrete argues that: 1) the evidence presented by the prosecution was legally insufficient to sustain his aggravated mayhem conviction; 2) the prosecution failed to prove the applicability of the group beating exception to personal infliction findings and thus the evidence was insufficient to sustain the jury's findings of personal infliction of great bodily injury; 3) the imposition of his $240 restitution fine violated the ex post facto clause and his right to due process because the court imposed the minimum under a statute amended after he committed his offense; and 4) his trial counsel was ineffective for failing to assert an imperfect self defense for aggravated mayhem.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary

5

authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A. <u>Sufficiency of the Evidence (Grounds 1 and 2)</u>

Negrete first argues that the evidence was insufficient to support his conviction for aggravated mayhem and the jury's findings of personal infliction of bodily injury. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it

6

would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review. *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005). A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

1.  *Aggravated mayhem*

On direct appeal, the California Court of Appeal considered and rejected Negrete's challenge to the sufficiency of the evidence supporting his aggravated mayhem conviction as follows:

> [Negrete] challenges the sufficiency of the evidence to support his conviction for aggravated mayhem. According to [Negrete], the evidence revealed only a sudden,

7

indiscriminate attack that resulted in an explosion of violence.  No evidence showed [Negrete] intended to cause a specific, maiming injury to Martinez.

In reviewing a defendant's challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence.  Substantial evidence is evidence that is credible, reasonable, and of solid value, such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.

We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that supports the jury's verdict.  Unless it is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction.

"A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body.  For purposes of this section, it is not necessary to prove an intent to kill . . . ." (§ 205.)

Aggravated mayhem is a specific intent crime requiring proof that the defendant specifically intended to cause the maiming injury.  Specific intent to maim is an essential element of aggravated mayhem.  An injury resulting in permanent disability or disfigurement does not by itself demonstrate a specific intent to maim.  Additional facts must support an inference of an intent to maim.

Evidence that shows no more than an indiscriminate attack is insufficient to prove the required specific intent.  Intent may be inferred from the circumstances surrounding the attack, the means used, or other factors.  Evidence that defendant aimed at a vulnerable part of the victim's body, such as the head, supports an inference that defendant intended to cause a maiming injury.

Under [Negrete's] analysis, the evidence showed only an unprovoked, sudden attack for which no witness could offer an explanation: "It was a drunken, violent brawl.  There were no words of intent.  There was no planned attack.  There was no sustained, repeated beating over a period of time."  [Negrete] reasons that the lack of an explanation for the genesis of the fight reveals that it was nothing more than an indiscriminate attack.  Therefore, the evidence was insufficient to prove aggravated mayhem.

At trial the bouncer, Justin Mayer, testified he saw a person matching [Negrete's] description repeatedly kick and stomp on Martinez's face as the victim lay prone on the ground.  Bar patron Cody Griffith testified [Negrete] stomped and kicked Martinez.  Griffith described [Negrete's] using his heel to stomp up and down on Martinez.  Griffith also stated [Negrete] kicked Martinez with "field goal kicks," like a football player kicking the ball through a goalpost.  [Negrete] pummeled Martinez with these kicks for about 30 seconds.  [Negrete] aimed at a vulnerable part of the prone Martinez's body with powerful kicks.  The attack left Martinez with lasting, severe brain injury.

Again, we view the evidence in the light most favorable to the judgment.  [Negrete] focused his attack on a particularly vulnerable portion of Martinez's body, his

8

> head, using deliberate, forceful kicks to pummel Martinez many times as the victim lay defenseless.
>
> Similar force was found sufficient to support an aggravated mayhem conviction in *Quintero*: "Here, Quintero focused his initial attack on a particularly vulnerable portion of Barajas's body, his head, using deliberate uppercut motions to slash his face many times with a retractable bladed knife. This action gave his blows more force and thus the greater ability to inflict serious injury than if he had merely jabbed or stabbed at Barajas's face. He held Barajas by the hair as he cut his right cheek and then turned him around by the hair to attack his face full on. The injuries to Barajas's arms and hands were caused by Barajas's attempts to protect and cover his face. Quintero stopped his attack once he had severely maimed Barajas's face. From these facts, a jury could reasonably conclude that Quintero essentially limited his attack to Barajas's face rather than indiscriminately attacking him, and find that the attack was guided by the specific intent of inflicting serious injury upon Barajas's face and head."
>
> [Negrete] attempts to distinguish *Quintero*, arguing the defendant in *Quintero* verbally taunted his victim, which was evidence of specific intent. However, the lack of verbal comments is not dispositive, nor is the lack of an explanation for the origins of [Negrete's] attack on Martinez. Instead, we determine whether, given the evidence at trial, a reasonable trier of fact could have found [Negrete] harbored the specific intent to permanently disable Martinez. We find substantial evidence supports the conviction.

*Negrete*, 2014 WL 413060, at *3-4 (citations omitted).

In support of his claim, Negrete re-asserts his arguments raised on direct appeal that the altercation was a "sudden, indiscriminate attack that resulted in an explosion of violence" and there was "[n]o evidence show[ing] [Negrete] intended to cause a specific, maiming injury to Martinez." But like the Court of Appeal, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *Schlup v. Delo*, 513 U.S 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004). Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). In this case, viewing the evidence in the light most favorable to the verdict, the witness testimony that Negrete repeatedly kicked and stomped on Martinez's face with "field goal kicks" as the victim lay prone on the ground is sufficient to support Negrete's aggravated mayhem conviction. Although it might

9

have been possible to draw a different inference from other evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Negrete bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have found that Negrete had the requisite specific intent to cause the maiming injury, especially considering the double deference owed under *Jackson* and AEDPA. Negrete is therefore not entitled to relief on this legal insufficiency claim.

      2.    *Personal infliction of great bodily injury*

The Court of Appeal similarly rejected Negrete's challenge to the jury's true findings as to the personal infliction of great bodily injury enhancements on counts 3 and 4:

> [Negrete] also challenges the sufficiency of the evidence in support of the personal infliction of great bodily injury enhancements on counts 3 and 4, arguing the People failed to prove it was impossible to determine which act by which aggressor resulted in the great bodily injury. Instead, [Negrete] asserts, the evidence revealed Martinez's injuries were most likely inflicted by an unidentified attacker, not [Negrete].
>     In general, a former section 12022.7 enhancement requires that the defendant personally inflicted the great bodily injury. However, an exception arises when a number of individuals participate in a group beating and it is impossible to determine which act by which individual resulted in the great bodily injury or injuries suffered by the victim. To establish the group beating exception, there must be evidence the defendant participated in the group beating, it is impossible to determine which assailant inflicted which injury, and the defendant's conduct must have been of such a nature that it could have caused the great bodily injury.
>     [Negrete] argues the evidence showed an attacker other than [Negrete] was the main assailant against Martinez: "Someone other than Negrete punched Martinez first, and knocked him to the ground. [Citation.] The unidentified attacker apparently wore shoes with a real sole, like DC brand shoes. [Citation.] This attacker's shoes left the shoe prints on Martinez. The mere flip flops Negrete wore did not match the shoe prints on Martinez. [Citation.] According to the evidence technician, Negrete's flip flops were not even close to matching the shoe prints on Martinez. The evidence, rather than showing it was impossible to show which assailant caused Martinez's serious injuries,

10

supported the reasonable conclusion that the other attacker, not Negrete, caused them. Thus, this was not a case where the group beating exception applied."

We read the evidence produced at trial differently. An unknown assailant initially punched Martinez and stomped on him while he was unconscious. [Negrete] then took advantage of the situation and began repeatedly stomping and kicking Martinez in the face. The jury could reasonably conclude Martinez's grave injuries resulted from the blows by either the unknown assailant or [Negrete], or a combination of both. In other words, sufficient evidence supported the group beating exception to the requirement that [Negrete] personally inflicted the great bodily injury. [Negrete] participated in a group beating, it was impossible to determine which assailant inflicted which injury, and [Negrete's] conduct could have caused the great bodily injury.[FN2]

> FN2. We note the People concede in a later argument that one great bodily injury enhancement was improperly imposed on count 3 and both enhancements were improperly imposed on count 4 [on unrelated grounds].

*Negrete*, 2014 WL 413060, at *4 (citations omitted).

As he did on direct appeal, Negrete again argues that the evidence showed that someone other than Negrete was the main assailant against Martinez. But again, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *Schlup*, 513 U.S at 330 (1995); *Bruce*, 376 F.3d at 957-58. Although Negrete's interpretation of the evidence presented at trial, as summarized above, may have been a plausible interpretation, the jury did not interpret the evidence that way, and, again, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. The record does not compel the conclusion that no rational trier of fact could have found true the personal infliction of great bodily injury enhancements, especially considering the double deference owed under *Jackson* and AEDPA. Negrete is thus not entitled to relief on this legal insufficiency claim either.

B.  Ex Post Facto Claim (Ground 3)

Negrete next alleges that the trial court violated the ex post facto clause when it imposed a fine that was the statutory minimum at the time of sentencing, but was $40 more than the

statutory minimum at the time of the offense. The Court of Appeal rejected the claim on direct appeal as follows:

> [Negrete] claims the trial court's imposition of a $240 restitution fine violated the ex post facto clause and his right to due process because the court imposed it under a statute amended after he committed the offense.
> At the time of [Negrete's] offenses, section 1202.4, former subdivision (b)(1) required the trial court to use its discretion to impose a restitution fine between $200 and $10,000 on all felonies. If the trial court imposed a fine greater than the minimum, the court was required to consider specific factors. However, no express finding by the court of these factors was required. (§ 1202.4, subd. (d).) In 2011, after [Negrete] committed his offense but prior to sentencing, the minimum fine was raised to $240.
> Restitution is to be imposed under the law applicable at the time of the offense, not at the time of sentencing. A fine that was properly imposed under the law at sentencing but improper under the law at the time of the offense violates ex post facto principles.
> In the present case, the court imposed a restitution fine of $240, well within the range under section 1202.4, subdivision (b)(1) as it read at the time of [Negrete's] offense. Therefore, the $240 fine did not retroactively increase [Negrete's] punishment because the statute at the time allowed the court to impose any fine between $200 and $10,000. Nor was the trial court required to state its reasons for imposing a fine greater than the minimum. We find no error.

*Negrete*, 2014 WL 413060, at *6 (citations omitted).

The Ex Post Facto clause, U.S. CONST. ART. I, § 9, cl. 3, forbids the application of laws that "'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Calif. Dep't of Corr. v. Morales*, 541 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 41 (1990)). But as the Court of Appeal reasonably concluded, Negrete cannot prevail on his ex post facto claim because he was not subjected to punishment at sentencing which he did not face at the time of his offense. Negrete is therefore not entitled to relief on this claim.

C.     Ineffective Assistance of Counsel (Ground 4)

Finally, Negrete claims that his trial counsel was ineffective for failing to properly challenge the sufficiency of the evidence of aggravated mayhem and failing to assert an

12

imperfect self-defense theory. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.[1] *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

---

[1] *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (instructing that, where the standard applies, habeas relief is not warranted unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict").

Thus, Negrete must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Negrete raised these ineffective assistance of counsel claims in his state habeas petitions. In the last reasoned opinion, the Superior Court rejected Negrete's ineffective assistance claims on the grounds that the evidence presented at trial adequately supported his aggravated mayhem conviction and did not support an imperfect self defense. Negrete fares no better on federal habeas review. As previously discussed in connection with Ground 1, this Court agrees with the state courts that the evidence supported his aggravated mayhem conviction. Thus, counsel cannot be deemed ineffective for failing to more thoroughly challenge the conviction on that basis. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (citation omitted)).

Nor can Negrete show that counsel was ineffective for failing to assert an imperfect self defense and request such instructions. The California Supreme Court has explained the doctrine of imperfect self-defense as follows: "'[a]n honest but unreasonable belief that it is necessary to defend oneself from imminent peril to life or great bodily injury negates malice aforethought, the mental element necessary for murder, so that the chargeable offense is reduced to

14

manslaughter.'" *People v. Rogers*, 141 P.3d 135, 177 (Cal. 2006) (citation omitted). The doctrine is "narrow" and applies "only when the defendant has an actual belief in the need for self-defense and only when the defendant fears immediate harm that must be instantly dealt with." *Id.* (citations and internal quotations omitted). The record supports the superior court's conclusion that there was no substantial evidence presented at trial from which the jury could have concluded that Negrete actually believed he was in imminent danger. Moreover, the California courts have regularly concluded that imperfect self-defense is a theory that negates the malice aforethought intent required of murder; thus, the imperfect self-defense arises only where a defendant is charged with murder, and the evidence is sufficient to support instruction on the lesser included offense of voluntary manslaughter.[2] *See, e.g.*, *People v. Quintero*, 37 Cal. Rptr. 3d 884, 896-97 (imperfect self-defense not applicable to offense of aggravated mayhem); *People v. Szadziewicz*, 74 Cal. Rptr. 3d 416, 428 (Cal. Ct. App. 2008); *People v. Hayes*, 15 Cal. Rptr. 3d 884, 888-89 (Cal. Ct. App. 2004) (imperfect self-defense applies only to "malice aforethought," not the more general malice applicable to charge of mayhem). Because there was no evidentiary or legal basis for counsel to assert an imperfect self defense, he cannot be faulted for not doing so. *See Sexton*, 679 F.3d at 1157. Negrete is therefore not entitled to relief on this ground.

---

[2] The California Superior Court did not address whether imperfect self defense was available in the absence of death. In any event, as previously noted, the Superior Court's determination that there was no substantial evidence to support an imperfect self defense is supported by the record, and therefore that court's determination that counsel could not be deemed ineffective for failing to assert the defense is neither unreasonable nor contrary to federal law.

## V. CONCLUSION AND ORDER

Negrete is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 31, 2017.

                                              /s/James K. Singleton, Jr.
                                              JAMES K. SINGLETON, JR.
                                              Senior United States District Judge